BEFORE THE SECOND DIVISION, JANUARY 23, 1950

No. 53949.—Carey & Skinner, Inc. v. United States, protest 127185–K (Buffalo).

LAWRENCE, Judge: The merchandise which forms the subject of this controversy is described on the consular invoices as "Electric Broilers" which obviously are designed for broiling and otherwise preparing food for the table.

In the "Report of Collector on Protest" it is stated that the importation consists of "(1) table utensils, composed wholly or in chief value of steel, chromium plated, nspf.; and (2) table utensils, composed wholly or in chief value of glass, pressed and unpolished."

The broilers consist of three separate metal parts and in addition a glass pyrex plate which may be used in certain cooking operations.

The collector of customs classified the three metal portions of the broilers as table utensils and assessed duty accordingly at the rate of 40 per centum ad valorem pursuant to the provisions of paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339). The pyrex plate was separately classified as a table utensil in chief value of glass, pressed and unpolished, in paragraph 218 (g) of said act (19 U. S. C. § 1001, par. 218 (g)) and duty was assessed thereon at 50 per centum ad valorem.

It is the claim of plaintiff in its protest that the broilers in controversy are dutiable as entireties at the rate of 17½ per centum ad valorem pursuant to the provisions of paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the trade agreement between the United States and Canada, effective January 1, 1939 (74 Treas. Dec. 235, T. D. 49752), as—

Cooking stoves and ranges, having as an essential feature an electrical heating element.

By amendment to the protest, it is further claimed by plaintiff that the pyrex plates are properly dutiable at 40 per centum ad valorem as parts of kitchen or household utensils, as provided in paragraph 339, supra.

Lazarus Rosenfield, appearing as a witness on behalf of the plaintiff, stated that he was the importer of the merchandise in question. A sample of the articles in controversy, together with a pamphlet descriptive of its use, having been received in evidence as plaintiff's collective exhibit 1, the witness testified that all of the imported articles were like said collective exhibit 1; that he sold them as small stoves and heaters to wholesalers and jobbers; that he made no representations to his customers as to the kilowatt capacity of the articles, and that he previously had not sold nor had any experience with this type of article.

Mrs. Pearl Rosenfield, called to testify in plaintiff's behalf, stated that she has had an article like collective exhibit 1 for 3 years and had made use of it; that she had used it as a heater and as a stove. When asked on cross-examination the purpose of the pyrex plate which accompanies the broiler, she testified:

Well, it keeps you from washing the whole bottom of the unit. In other words, when you have a lot of drippings from lamb chops, and things like that, instead of washing the bottom, you just have to wash the plate.

X Q. It is for convenience then, is that right?—A. That's right.

X Q. You could broil—it would broil just as well without the glass in it?—A. Yes.

X Q. It would steam just as well without the glass?—A. That's right. It's just that you don't have to wash the whole unit at one time. You just have to wash the glass plate.

X Q. Then if you didn't have the glass you simply would have to wash the bottom part of the grill instead of the glass?—A. That's right.

*	*	*	*	*	*	*

X Q. Would you say that the glass part of this exhibit marked 1–B is the usual Pyrex pie plate?—A. That's right. I think it's either a seven or a nine.

X Q. It can be used then for baking pies and for other purposes besides that?—A. Yes.

*	*	*	*	*	*	*

X Q. You can put this in the oven in your house?—A. Yes, that's right, without breaking it.

The testimony of Mrs. Jean McMaude, also called as a witness by the plaintiff herein, was in substance the same as that of Mrs. Rosenfield.

The testimony of other witnesses for the parties hereto dealt for the most part with the question of the amount of electrical power utilized to operate the broilers, which, in view of the conclusion we have reached, is not deemed to be of material importance.

As to what constitutes an entirety is well settled in customs law. The principle was clearly set forth by our appellate court in *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680, wherein rubber boots and leather straps imported with them to be used to bind them to the feet and ankles of the wearers were held not to be entireties. The court there said—

We are of the opinion that even though it be considered that the boots and the straps were designed to be used together, when desired, and were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. The boot remains a boot and the leather strap remains a leather strap. When separated the boot remains useful as a boot. It retains its commercial entity and remains complete in itself, a rubber boot. The leather strap also retains its essential character and commercial entity, and remains complete in itself, a leather strap, or, as has been suggested, a leather belt.

In the case before us, in view of the testimony of plaintiff's witnesses, set forth, *supra*, it is evident that plaintiff has failed to establish that the electric broilers and the pyrex plates are entireties within the legal concept.

In any event, even if the pyrex plates and electric broilers were considered to be entireties, it would seem doubtful whether they could be removed from the provisions of paragraph 339, *supra*, as table utensils, as classified by the collector, in view of the concluding provision in paragraph 339, *supra*, which reads as follows:

* * * the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof.

The evidence presented for our consideration in this case as to the nature, character, and use of the articles in controversy confirms rather than contradicts the collector's classification.

Furthermore, no evidence has been presented to indicate that there is a commercial meaning for the provision for "cooking stoves" in paragraph 353, *supra*, differing from its common meaning, and it is well settled that "tariff acts are drafted * * * in the language of commerce, which is presumptively that in common use" (*Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436). Resorting to lexicographic authorities as an aid to the court in arriving at the common meaning of the term "cooking stoves," the following definitions are enlightening:

From Funk & Wagnalls New Standard Dictionary of the English Language (1942 edition)—

**stove.** *n.* 1. An apparatus consisting of a closed or partly closed box or other receptacle, properly portable, as distinguished from a fireplace or furnace, in which fuel is consumed for heating a room or house, for cooking, or for other purposes.

Stoves are of various forms and constructed of various materials, as cast iron, sheet iron, bricks, tiles, stone, etc. They are named (1) from their use or place of use; as * * * **cooking-s.** (having an oven and holes in the top for kettles, pans, etc.: called also **cook-s., range-s.**) * * *

From Knight's American Mechanical Dictionary—

**Cooking stove.** A structure, usually of iron, containing a fuel-chamber and ovens, with holes into which pots may be set to boil the contents.

From a review of the testimony presented at the trial of this case and from an examination of the exhibits admitted in evidence herein and in the light of the

foregoing definitions, it is clear that the plaintiff has failed to sustain its claim that the electric broilers in controversy come within the provision for "cooking stoves" in said paragraph 353.

As to plaintiff's alternative claim that the pyrex plates are "parts of the broilers, kitchen or household utensils, with which they are used," and "dutiable at 40% ad valorem under Paragraph 339 of the Tariff Act of 1930," said contention is wholly without merit inasmuch as there is no provision for "parts" of articles enumerated in paragraph 339, *supra.*

Upon a careful consideration of the record before us, we are constrained to hold that the plaintiff has failed to sustain its burden of proving that the classification of the collector was erroneous and that the claims relied upon by plaintiff are correct.

The protest is accordingly overruled.

Judgment will issue accordingly.