BEFORE THE FIRST DIVISION, SEPTEMBER 12, 1957

**No. 61194.**—J. F. Goldkamp & Co. *v.* United States, protest 226578–K (St. Louis).

MOLLISON, Judge: The merchandise the subject of this protest consists of 100,000 steel balls, each 1 millimeter in diameter, described on the invoice as "Stainless Steel Anti-Friction Bearings." The collector assessed duty thereon at the rate of 72 cents per dozen, plus 40 per centum ad valorem, under the provision in paragraph 1550 (b) of the Tariff Act of 1930 for—

Fountain pens, fountain-pen holders, stylographic pens, and parts thereof * * *,

on the ground that they were parts for fountain pens.

Although not denying that the balls were imported to be used as ball points in the manufacture of ball point pens, plaintiff contends (1) that they did not have the character and condition of ball points and could not be used as such; (2) that ball point pens are not fountain pens within the meaning of paragraph 1550 (b), *supra*, and (3) that, in any event, the articles are, in fact, antifriction balls, the tariff provision for which is more relatively specific in its application to the merchandise than the provision for parts of fountain pens.

Plaintiff claims that the balls are properly dutiable under the provision in paragraph 321 of the tariff act, as modified by the Presidential proclamation relating to the General Agreement, T. D. 51802, for—

Antifriction balls * * * for whatever use intended * * *,

with duty assessment at the rate of 4 cents per pound and 25 per centum ad valorem, or, alternatively, under the general provision in paragraph 397 of the said act, as modified, for articles composed wholly of steel, not specially provided for.

It is apparent that the first issue which must be decided is that relating to the relative specificity between the provision for "antifriction balls * * * for whatever use intended" and the provision for parts of fountain pens. For the purpose of such a contention, plaintiff admits that the balls in issue are parts of fountain pens, but claims that they are also antifriction balls and that the provision therefor is more specific in its application to the merchandise than the provision for parts of fountain pens.

In this connection, plaintiff sought to establish that the balls in issue are, in fact, antifriction balls through the testimony of a consulting chemical engineer who had a background of teaching mechanics and experience in research and design of bearings. In the opinion of this witness—

The purpose that is served [by a ball in a ball point pen] is that it is functioning as an anti-friction ball replacing the sliding friction of a nib of an ordinary pen by the rolling friction, rolling contact of an anti-friction ball, therefore producing a smoother motion over paper, writing over the paper fibers. Also it serves as an anti-friction ball in transferring an oleoresinous ink to the paper, which gives the ball point pen its chief advantage, because it is possible to transfer paste-like oleoresinous ink by an anti-friction ball. * * * (Tr. p. 49.)

Except for the description of the ball as an antifriction ball, the foregoing opinion is not radically different from that of one of the defendant's witnesses, the vice president in charge of engineering of a domestic manufacturer of ball point pens, who, in answer to the question put by defendant's counsel, "What is the purpose of the ball in ball point pens?" replied:

It engages the paper by frictional engagement with a layer of ink between it, and as it revolves it spreads a film of ink over the surface, and the ink is removed on contact with the paper as you move the ball.  (Tr. p. 125.)

Plaintiff's witness likened the operation of the ball of a ball point pen to that of a single ball caster, an illustrative sample of which is in evidence as plaintiff's exhibit 4.  In such a caster, he said, the ball "functions as an anti-friction ball in the same way as it does in a ball point pen, moving over the surface, the ball rolls by rolling contact, and therefore rolling friction with the surface."  (Tr. pp. 53–54.)

The tariff term "antifriction balls" does not appear to be anywhere defined, but Funk & Wagnalls New Standard Dictionary, 1942, defines "anti-friction" as an adjective as follows:

Lessening or tending to lessen friction, as by lubricants or rollers.

In the brief filed in its behalf, defendant states that "It is common knowledge that the main purpose of 'antifriction balls' is to reduce friction in bearings." Even assuming such fact to be true, it is observed that the tariff provision in paragraph 321, *supra*, does not limit the antifriction balls there provided for to use in bearings, but embraces such balls "for whatever use intended."

Defendant also contends, in its brief, that the balls imported to be used as parts of pens are not *ejusdem generis* to the type of merchandise covered by paragraph 321, as originally enacted, as follows:

Antifriction balls and rollers, and metal balls and rollers commonly used in ball or roller bearings, finished or unfinished, for whatever use intended.

The rules of *ejusdem generis* or *noscitur a sociis* (the latter being probably the rule intended to be invoked) are rules of statutory construction used when it is sought to determine the meaning of a statutory word or term by those words or terms which are associated with that in question.  The rule of *ejusdem generis* applies where general words follow words designating particular things, classes of persons, or subjects.  That does not appear to be the situation respecting the term "antifriction balls," as used in paragraph 321.

The rule of *noscitur a sociis* is treated by Crawford in "The Construction of Statutes" (St. Louis, 1940) as follows:

In order to ascertain the meaning of any word or phrase that is ambiguous or susceptible to more than one meaning, the court may properly resort to the other words with which the ambiguous word is associated in the statute.  Accordingly, if several words are connected by a copulative conjunction, a presumption arises that they are of the same class, *unless, of course, a contrary intention is indicated.* On the other hand, the maxim, *"noscitur a sociis"*, is not to be applied where the meaning of a word or phrase is clear and unambiguous.  *Nor is it to be used so as to render general words useless.*  Like all other principles of construction, it is to be used only as an instrumentality for determining the intent of the legislature where it is in doubt.  [Italics, except *"noscitur a sociis,"* added.]

It is true that as found in paragraph 321, as originally enacted (but not, it is noted, in the general agreement modification thereof), the term "antifriction balls" is associated with articles used in ball and roller bearings, but we think the inclusion of the sweeping term "for whatever use intended" demonstrates a legislative intent not to limit the scope of the term to balls used in ball bearings. Unless this were the intent, there would be no purpose in the inclusion of the words "for whatever use intended."

We think the record justifies a finding that the use of the ball of a ball point pen is as an antifriction ball, and that, in view of the language "for whatever use intended," such balls are within the scope of the provision for antifriction balls in paragraph 321, *supra.*

The only question remaining, therefore, is whether that provision is more specific in application than the provision for parts of fountain pens. Neither of the provisions exhibits any legislative intent that one should control over the other, such as might be the case had a "not specially provided for" clause or other words of limitation been added.

If, as we have held, the ball used in a ball point pen is an antifriction ball, that term becomes the name of a specific part of a fountain pen and, as applied to the merchandise at bar, would be a narrower description and, hence, more relatively specific than the general term "Fountain pens * * * and parts thereof."

In view of the foregoing disposition of the issue as to relative specificity of competing tariff terms, it becomes unnecessary to consider plaintiff's contentions that the involved balls are not parts of fountain pens.

Judgment will issue sustaining the protest claim under paragraph 321, as modified, accordingly.