(C.D. 2209)

EVERBEST JEWELRY CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 14, 1960)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This protest involves certain miniature flashlights, identified on the invoice as " 'TOP LITE' FLASHLIGHTS," which were assessed with duty at the rate of 55 per centum ad valorem under the provisions of paragraph 1527(c)(2) of the Tariff Act of

1930, as modified by T.D. 53865, supplemented by T.D. 53877, which, so far as pertinent, reads as follows:

Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished, composed wholly or in chief value of metal other than gold or platinum (whether or not enameled, washed, covered, or plated, including rolled gold plate), * * *:

> Articles and parts (not including parts valued under 20 cents per dozen) valued not over $5 per dozen pieces or parts (* * *)____ 55% ad val.

Plaintiff's principal claim, and the one upon which it completely relies, is for classification under the provision in paragraph 397 of the Tariff Act of 1930, as modified by T.D. 51802, for articles, not specially provided for, composed wholly or in chief value of base metal, and not plated with platinum, gold, or silver, or colored with gold lacquer, carrying a duty assessment of 22½ per centum ad valorem.

There is also a claim in the protest for classification of the merchandise under paragraph 353, as modified by T.D. 51802, either as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, or as articles having as an essential feature an electrical element or device. Plaintiff's attitude toward this alternative claim was stated by counsel, in the course of his opening statement, as follows: "* * * and quite frankly, while we have a claim under paragraph 353, our efforts will be directed toward showing that this is not the proper paragraph." (R. 6.) In the light of our conclusion, as developed, *infra*, it is unnecessary to discuss plaintiff's alternative claim. Accordingly, the following review of the record herein will make no reference to the testimony relating thereto.

Samples, representative of the imported merchandise, are in evidence (plaintiff's illustrative exhibits 1 and 2). They are miniature flashlights, which, at the time of importation, contained no batteries. They are about 3 inches long and approximately three-quarters of 1 inch in diameter through their tubular cross-section. On one side is a light switch. A small bulb is fitted into the reflector at one end. The other end is flat and has stamped thereon the trade name, "Top-Lite," (illustrative exhibit 1). One of the samples (illustrative exhibit 2) has fitted on the flat end thereof, a small ring and chain, which were not on any of the imported flashlights involved herein. It is agreed between the parties that the articles in question are composed in chief value of base metal, and that they are not plated with platinum, gold, or silver, or colored with gold lacquer.

Plaintiff is an importer and distributor of various articles. Its first witness, Marvin Schwarz, is employed as director of sales, and import

buyer. He testified that he sold articles, such as those under considera-
tion, at wholesale throughout the United States to chainstores and to
jobbers and that he had seen them "sold occasionally by retailers to
consumers in the course of visits to stores." (R. 25–26.) Much of the
witness' testimony on direct examination related to the use, or sus-
ceptibility of use, of the merchandise in question. In this connection,
he stated that the articles under consideration are "usually sold as a
small flashlight for use in the home or car as a supplementary flash-
light around the house," that they "may be used by children in imita-
tion of their father while working in the workshop, or in a garage,
or something to that effect," or that they "could be used as a novelty
item." (R. 22.) He stated further that he "never saw anyone with
one in their pocket." (R. 23.) Referring to his personal observation
of the use of the instant merchandise, the witness testified as follows
(R. 27):

I have seen it used around people's homes, not from any research standpoint,
but personally I have seen it used in homes, in garages, in cars, for uses similar
to that. I have seen it used in camps; boys in camps use them.

Comparing the use of the miniature flashlight involved herein with
the larger, so-called standard flashlight, the witness stated that the
article in question gives less illumination, but will get into a smaller
place, than the larger flashlight. These miniature flashlights require
batteries to function, but they are never merchandised therewith. In
explanation thereof, the witness testified as follows (R. 22):

There is a great danger in shipping any flashlight with batteries for the fact
the batteries may not be leakproof. They might deteriorate while in the flash-
light case.

Cross-examination of the witness developed that the designation,
"Top-Lite," is the brand name owned by plaintiff and shown on
plaintiff's products. The witness identified as one of plaintiff's prod-
ucts a miniature flashlight, substantially the same as the articles in
question, and bearing the name, "Top-Lite," on the flat end. The
flashlight is conveniently fitted onto a cardboard merchandising tag,
having the inscription, "Top-Lite—Power-Packed—Miniature
Flashlight—for Pocket—for Purse—for Car" (defendant's illustra-
tive exhibit A). Asked by the court whether the printing on the
merchandising tag was sponsored by plaintiff, the witness answered,
"It is our package, yes" (R. 32) and stated, further, that plaintiff
sold the item for "the first two or three years" it imported miniature
flashlights, but that the particular package, with the advertising
matter indicative of the use of the articles is "not in current use,"
although "The merchandise is still being distributed in a different
package." (R. 33.) The witness admitted that the miniature flashlights
discussed in the course of his testimony (plaintiff's illustrative exhibits

1 and 2 and defendant's illustrative exhibit A) "could be carried in a pocket or a purse." (R. 34.)

Following the testimony of plaintiff's witness, Schwarz, as hereinbefore outlined, counsel for the respective parties entered into a stipulation that appears in the record as follows (R. 47–48) :

MR. DONOHUE: With the court's permission I propose a stipulation to counsel for defendant.

I offer to stipulate with counsel for the defendant that if Mr. Marvin Mandell were called to the witness stand by plaintiff he would testify that he is an officer of plaintiff corporation, that his experience is the same as that of the previous witness, Mr. Schwartz [sic], and that if he were asked the same questions on direct and cross-examination and, if he were asked the same questions by the court as were asked of the previous witness, Marvin Schwartz [sic], he would give the same answers and that the record may stand as if such testimony had been given.

MISS STRUM: The Government stipulates that the importer's witness would so testify.

MR. DONOHUE: I offer further to stipulate that if Mr. Jerry Pressner were called as a witness by plaintiff he would testify that he is associated with the firm of Max Pressner & Company, importers of articles such as those in controversy; that he has been associated with his company for two years; that in other respects his experience is the same as the experience of the witness Marvin Schwartz [sic], and, that if he were asked the same questions on direct and cross-examination and if he were asked the same questions by the court as were asked of the witness Marvin Schwartz [sic] he would give the same answers and that the record may stand as if such evidence had been given.

MISS STRUM: The Government stipulates that the importer's third witness would so testify.

The testimony of plaintiff's fourth, and last, witness, an electrical engineer employed as a member of the technical staff of Bell Telephone Laboratories, was directed toward showing that the miniature flashlights in question are not within the class or kind of merchandise contemplated by the provisions of paragraph 353, as modified, *supra*.

Defendant called two witnesses. The vice president of the Bridgeport Metal Goods Manufacturing Co., producer of flashlights and flashlight cases, was defendant's first witness. He stated that he has been associated with his employer for 25 years, and that, at the present time, he is in complete charge of the production, development, sales, and distribution of flashlight cases and flashlights. He has sold flashlights all over the United States to all types of trade, "including variety chains, mail-order houses, jobbers, drug trade, anyplace we can sell them." (R. 76.) The witness testified that he owns several patents on flashlights that he has designed and which his employer manufactures and sells throughout the United States. He identified a miniature flashlight (defendant's illustrative exhibit D) that he designed to be carried on or about the person and which he had seen so used. His testimony along that line is as follows (R. 79) :

I have seen them carried in women's purses, for instance to the opera or show at night. A lady will open her purse, take out the light, see her program. I have seen nurses carry them in the hospitals in their pocket so that they can walk in a room without creating too great a light, have enough to see by. Seen them in hundreds of cases carried in the purse and in the pocket.

An examination of the witness' flashlight (illustrative exhibit D) supports his oral testimony that the item is identical with the merchandise in question (illustrative exhibit 1, *supra*), except for the trade name, "Torchy," stamped on the bottom and a slight change in the curve of the switch.

Defendant's second witness stated that he is a designer of products for the National Carbon Co., Eveready, a manufacturer of various products, including flashlights. The witness testified that he has designed different types and sizes of flashlights during the 39-year period he has been with his employer. He identified a miniature flashlight (defendant's illustrative exhibit F) that he designed to be carried on or about the person. In connection therewith, he stated that the size of the article, coupled with knowledge of the definite sacrifice in light output, commits the item as one to be carried around in the purse or in the pocket. With reference to the miniature flashlight, with ring and chain attached (plaintiff's illustrative exhibit 2), the witness testified that the purpose of the chain was to hold keys and that he, personally, had so used such merchandise. Referring to the miniature flashlight in question (illustrative exhibit 1, *supra*), the witness stated that he has seen such merchandise used, that men and women carry it in coat pockets or in purses and use it for lighting keyholes. Following is an excerpt from his testimony on the use of the article under consideration (R. 102):

Q. You have stated you have seen merchandise like Plaintiff's Exhibit 1 used?—A. That's right.

Q: And referring to merchandise like Exhibit 1 how is it used?—A. Primarily for pocket use for the simple reason we only introduced one in 1955 because it's always been our feeling it's the most inefficient lighting device known. The candle power from the lamp is one-tenth as compared to eight-tenths on a two-cell conventional flashlight. So you get 100 beam candle power out of this compared to 1,200 from a conventional two-beam light. So by no extreme of my imagination could I call this a utility light. This is to meet an infrequent occasion of lighting up a place that it's a little better than a match, and it hasn't got the hazard. And it has a novelty appeal, and it has an eye appeal, the convenience of carrying it.

On cross-examination, the witness stated that the primary purpose of miniature flashlights, such as those discussed herein as well as the larger flashlights, is to give varying degrees of illumination, from low intensity to high intensity.

The provisions of paragraph 1527(c)(2), as modified, *supra*, invoked herein by the collector, have been the subject of much customs

litigation arising under the Tariff Act of 1930, as well as under prior tariff acts. Judicial interpretation thereof is very comprehensively set forth in two leading cases, i.e., *Gallagher & Ascher et al.* v. *United States*, 6 Ct. Cust. Appls. 105, T.D. 35343, which arose under the Tariff Act of 1913 (paragraph 356), and *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T.D. 42079, that arose under the Tariff Act of 1922 (paragraph 1428).

In the *Gallagher & Ascher et al.* case, *supra*, the merchandise under consideration was described by the court as "so-called 'pro-repel' lead pencils, meaning that the lead is held by a small cylinder which slides in and out at the end of a larger cylinder or barrel." The pencils were composed entirely of base metal, except that some of them had imitation precious stones set in their top ends. Referring to the provision for articles "designed to be worn on apparel or carried on or about or attached to the person," the court stated as follows:

* * * By that provision a duty is imposed upon articles of a certain value composed of metal, which are designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, etc. The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of *ejusdem generis* is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

In the *Horstmann Co.* case, *supra*, the appellate court referred to several earlier cases, including the *Gallagher & Ascher et al.* case, and then stated as follows:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to

the person as *"incidental* articles of *mere personal comfort, convenience, or adornment."* [Italics not quoted.] Such articles may be of utility or of adornment, or they may possess both of these qualities; but, unless they are designed to be worn or carried, or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment."* [Italics not quoted.] If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein. [All italics quoted in decision.]

The statutory construction laid down in the *Gallagher & Ascher et al.* and the *Horstmann Co.* cases, *supra*, was affirmed by the United States Court of Customs and Patent Appeals in its relatively recent decision in *United States* v. *Astra Trading Corp.*, 44 C.C.P.A. (Customs) 8, C.A.D. 627, which involved the provisions of paragraph 1527(c)(2) of the Tariff Act of 1930, as modified.

The three cited cases will support the following analysis of the provisions of paragraph 1527(c)(2), as modified, *supra*: (1) That the exemplars enumerated therein are diversified in character, some being wholly ornamental, some being wholly utilitarian, and some possessing both qualities; (2) that the exemplars enumerated therein are all alike, in that, in their customary use, they are carried upon the person of the user as incidental articles of mere personal comfort, convenience, or adornment; and (3) that the rule of *ejusdem generis*, as it is applicable to the statutory language, is limited to the controlling resemblance that the articles in question are designed to be carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use.

While plaintiff recognizes the judicial pronouncements in the three cited cases, nevertheless, it contends that the articles under consideration are not within the purview of paragraph 1527(c)(2), as modified, because, as stated in counsel's brief, they "would be carried, if at all, for a completely utilitarian purpose" and serve their purpose of casting illumination "with less efficiency" than larger flashlights. The degree of "utility" and "efficiency" is not the all-important consideration for a proper disposition of the issue before us. "Utility" and "efficiency" relate to the use of the merchandise, but "use" does not control the classification of merchandise under said modified paragraph 1527(c)(2). Hence, plaintiff's contention cannot prevail. As

stated in *Coty* (*Inc.*) v. *United States*, 18 C.C.P.A. (Customs) 33, T.D. 44003, "the test of classification under this statute was not the use of the articles but the purpose for which they were designed." In *Lionel Trading Co.* v. *United States*, 15 Ct. Cust. Appls. 365, T.D. 42562, which was cited with approval in the *Coty* (*Inc.*) case, the principle was stated as follows: "The carrying itself is not made the test. It is rather that they are designed, that is, apt and suitable articles to be so carried." In each of the two cases just mentioned, the merchandise under consideration was metal lipstick holders that were assessed as articles "designed to be worn on apparel or carried on or about or attached to the person" and claimed to be classifiable as manufactures of metal, not specially provided for. In the *Coty* (*Inc.*) case, the appellate court expressed its factual findings as follows:

> * * * This testimony is to the effect that the articles in question are imported empty, filled by the appellant with lip sticks after they are imported, and are then sold to women who use them in making their toilet at their homes, on the streets, and elsewhere. The articles are not only carried by women upon their persons, but there is some evidence that occasionally these articles are left at their homes on their dressers for use in making their toilets.

In reaching its conclusion and holding the merchandise to be properly classifiable as articles designed to be carried upon the person, the court, in the *Coty* (*Inc.*) case, *supra*, stated as follows:

> It must be obvious to anyone who inspects the samples, or who reads this testimony now before us, that the articles are designed to be carried upon the person. No particular object is apparent why they should be made in the form they are, with a cover for the lip-stick contents, if they were intended to be kept on the dressing table of a lady, for use there.

Substantially the same reasoning, with the same force and effect, can be applied in this case. An examination of the samples (plaintiff's illustrative exhibits 1 and 2) shows that the miniature flashlights under consideration possess definite features—particularly their size, shape, and light construction—associated with articles designed to be carried on or about the person. The testimony of defendant's witnesses to the effect that the articles in question are carried in pockets and in purses, for use at times and in places where occasional light of low intensity is desirable, is persuasive toward the conclusion that these miniature flashlights, in their customary use, are incidental articles of mere personal comfort or convenience, of the kind classifiable under said modified paragraph 1527(c)(2). Furthermore, plaintiff's own product (defendant's illustrative exhibit A), with the admission that the miniature flashlight was designed to be carried in a pocket or in a purse, lends support to the collector's classification.

That the miniature flashlights in question are novelties, is no bar for their classification under said modified paragraph 1527(c)(2).

In the *Gallagher & Ascher et al.* case, *supra*, the so-called "pro-pel" lead pencils involved therein were recognized as novelties and were held to be properly classifiable under the provision for articles "designed to be worn on apparel or carried on or about or attached to the person." The same conclusion was reached in the case of *Abercrombie & Fitch Co.* v. *United States*, 31 C.C.P.A. (Customs) 56, C.A.D. 248, which involved so-called "pocket warmers" that the court regarded as novelties.

The case of *Lent* v. *United States*, 1 Ct. Cust. Appls. 542, T.D. 31549, cited in plaintiff's brief, has no bearing on the issue presented herein. The case arose under the Tariff Act of 1909 (paragraph 448), in which the statutory language was materially different from that involved in this discussion. The distinction was recognized in the *Astra Trading Corp.* case, *supra*, wherein the appellate court, after quoting from the *Gallagher & Ascher et al.* case, *supra*, as hereinbefore set forth, stated as follows:

It is thus clear that, due to the presence of the 14 new exemplars in paragraph 356, some of which were *wholly utilitarian*, the competition between ornamental and utilitarian articles announced in the *Lent* case, *supra*, was abandoned and a new test substituted therefor, i.e., whether or not the articles were "incidental articles of mere personal comfort, convenience or adornment." [Italics quoted.]

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the miniature flashlights in question to be classifiable under the provisions of paragraph 1527 (c) (2), as modified, *supra*, and dutiable thereunder at the rate of 55 per centum ad valorem, as assessed by the collector.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. Our references herein are to those cases considered necessary to support the reasoning followed and the conclusion reached.

The protest is overruled, and judgment will be rendered accordingly.