**KOTAKE CO., Ltd., American Customs Brokerage Co., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

C.D. 2934; Protest No. 64/23145–21337

United States Customs Court
Second Division.
March 30, 1967.

Glad & Tuttle, San Francisco, Cal.
(Edward N. Glad and Robert Glenn
White, San Francisco, Cal., of counsel),
for plaintiffs.

Barefoot Sanders, Asst. Atty. Gen. (Samuel D. Spector and Andrew P. Vance, New York City, Trial Attorneys), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

This case raises the question of the proper tariff status of certain imported articles invoiced as "Sanyo Electric Automatic Rice Cooker[s]." This merchandise was classified within the provisions of paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as household utensils in chief value of aluminum and, accordingly, assessed with duty at the rate of 3½ cents per pound and 17 per centum ad valorem.

It is the claim of the plaintiffs that the cookers in issue are more specifically provided for in paragraph 353 of said act, as modified by Presidential Proclamation No. 3468, 97 Treas.Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas.Dec. 430, T.D. 55649, as furnaces, heaters or ovens, or other articles having as an essential feature an electrical element or device, and, therefore, are dutiable at either 10 percentum ad valorem or 11½ per centum ad valorem.

In issue, by reason of the conflicting positions of the parties, are the following provisions of law:

Paragraph 339, as modified by T.D. 54108, supra:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

\* \* \* \* \* \*

Composed wholly or in chief value of aluminum.............. 3.5¢ per lb. and 17% ad val.

Paragraph 353, as modified by T.D. 55615, supra:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \*

Furnaces, heaters, and ovens, and parts thereof.............. 10% ad val.

\* \* \* \* \* \*

Other (except \* \* \*.......... 11½% ad val.

When this case was called for trial, one witness testified on behalf of plaintiffs. He was Stephen T. Kotake, vice president and treasurer of the plaintiff Kotake Co., Ltd., and had been associated with the firm since approximately 1945. His duties consist of buying and selling general merchandise, gift items, and general household goods of the type handled by his company and include checking the market and keeping up with business trends. His position also requires that he have a knowledge of the uses of the merchandise sold by his firm. Sales of his company's goods were made throughout the State of Hawaii, along the Pacific coast, and in New York.

Mr. Kotake testified that his company has been selling the Sanyo Electric Automatic Rice Cooker for 10 to 12 years, and that he is personally familiar with it by reason of his business dealings, the use of a sample cooker in his home, and observations of the use of that article in other homes, in restaurants, and in "big clubs."

A pictorial representation of the cooker together with its internal arrangement was introduced into evidence as plaintiffs' exhibit 1. According to the witness, the cookers come in three sizes. Each consists of an outer pot within which is fitted a removable second pot. The food to be cooked, such as rice, is placed in the inner pot and a suitable amount of water is poured into both pots. The cooker is then covered and connected

to an electric outlet by means of a cord and plug. The electricity thus supplied conveys the energy necessary to the operation of an electrical heating element which is within and part of the cooker.

The witness stated that this process steams the food and that, although he has seen it used to steam potatoes and other foods, he had not used it himself to prepare such recipes as the shortcake or custard pudding mentioned in a booklet distributed by the manufacturer and introduced in evidence as defendant's illustrative exhibit A. In all of its preparations, water is essential for the cooker's operation.

The record also includes a stipulation to the effect that the item before the court is an article which has as an essential feature an electrical element or device and is in chief value of metal.

By reason of the foregoing, it appears that the central issue in this case is whether the Sanyo cooker is more specifically provided for by the language in paragraph 339 relating to household utensils, whether or not containing electrical heating elements, or the language of paragraph 353 relating to articles having as an essential feature an electrical element or device.

■■ The first phase of this issue is concerned with the question of whether the instant cooker is provided for *eo nomine* in paragraph 353. Of course, if it is, the relative specificity thereof is concluded, in the absence of a clearly shown legislative intent to the contrary, since a "not specially provided for" clause in a use provision excludes therefrom articles enumerated by *eo nomine* designation, or explicit description. United States v. Lansen-Naeve Corp., 44 CCPA 31, C.A.D. 632; M. Pressner & Co. v. United States, 42 CCPA 48, C.A.D. 568.

■ In the consideration of this facet of the case, the court is not unmindful of the fact that, as written by the legislature, the pertinent language in paragraph 353 is descriptive rather than denominative, and that the items named in the provision are there simply as illustrations of the intended scope of the general designation. However, the original language of the act is not here controlling since, by virtue of the Presidential proclamation hereinabove quoted, that which was initially descriptive has been designated by name. Atalanta Trading Corp. v. United States, 42 CCPA 90, C.A.D. 577.

It is the contention of the plaintiffs that the subject merchandise is provided for *eo nomine* within that modification either as a heater or as an oven. As to this matter, we are of the opinion that, while the instant cooker possesses certain characteristics in common with heaters and ovens, it is in the entirety something more than, and/or different from, either. Unlike the enumerated heaters which serve simply to warm, the Sanyo cooker serves to cook as well as to warm. Unlike the enumerated oven, which is defined by the lexicons as an inclosed chamber for heating, baking, or drying, the instant cooker contains, in addition to a chamber, a detachable pot, which combination by a special arrangement cooks food by a steaming process. It is a device which, by reason of its self-contained separate cooking receptacle, differs in several essential respects from an oven and more markedly from a heater.

As an alternative to its claim that the Sanyo cooker is provided for *eo nomine* in paragraph 353, as modified, plaintiffs suggest that the cooker is "by function and use patently *ejusdem generis* with the cooking exemplars found in paragraph 353."

■ *Ejusdem generis* means literally "of the same kind." It is a rule which the courts have applied as an aid to interpreting the intent of the legislature, in providing for a class of articles, after first specifically enumerating two or more members of that class, J. F. Goldkamp & Co. v. United States, 39 Cust.Ct. 420, Abstract 61194. In determining whether an item is embraced within the class, the courts have looked to the enumerated articles to ascertain the characteristics which they possess in

common. Everbest Jewelry Corp. v. United States, 45 Cust.Ct. 116, C.D. 2209; D. N. & E. Walter & Co., Hoyt, Shepston & Sciaroni v. United States, 43 CCPA 100, C.A.D. 615. Accordingly, if the rule of *ejusdem generis* is a useful tool for the construction of this portion of paragraph 353, it is not properly employed to demonstrate the affinity of the subject cooker to any particular cooking exemplar or group of cooking exemplars named in the provision, for cooking devices are not the only exemplars which are mentioned. The only proper use of *ejusdem generis* would be to demonstrate that the cooking and heating articles share that particular characteristic which unites all of the exemplars which, in view of their otherwise complete disparity, consists of their being articles which have an electrical element as an essential feature. Seprol, Inc., and Sopac Transport Corp. v. United States, 48 Cust.Ct. 480, Abstract 66856; United States v. S. P. Skinner Co., Inc., 46 CCPA 105, C.A.D. 708; John A. Steer & Co. v. United States, 24 CCPA 293, T.D. 48737.

It serves no useful purpose, however, to dwell further upon the proposition that the subject cookers are *ejusdem generis* with the articles named as exemplars in paragraph 353, for it has been conceded that they are essentially electrical and presumptively could not otherwise function. Unquestionably, therefore, in the absence of any conflicting provisions, they would properly find classification within the language of paragraph 353.

We are, nevertheless, faced with the problem of determining whether, because of the phraseology of paragraph 339, there exists such conflict as precludes classification of these articles in paragraph 353.

■■ At the approach to this avenue, we deem it appropriate to observe that the collector's classification of the subject merchandise in paragraph 339 is presumptively correct and is predicated upon the finding that all facts exist which are necessary to support that conclusion. Atlantic Aluminum & Metal Distributors, Inc. v. United States, 47 CCPA 88, C.A.D. 735; United States v. John A. Steer Co., 46 CCPA 132, C.A.D. 715. It is, therefore, to be presumed that these are utensils chiefly used in the household, and we find no evidence in the record to rebut that presumption. Whether they are such household utensils as are excluded from paragraph 339 by reason of their electrical elements and certain judicial pronouncements with respect to the relative specificity of these two provisions lies at the root of this controversy.

It is plain that the language of paragraph 339 contemplates the inclusion of some articles having electrical heating elements as constituent parts. The text of the paragraph so provides. Were we, notwithstanding, automatically to consign to paragraph 353 all household articles having as an essential feature an electrical heating element, we would be rendering ineffectual and meaningless the words "whether or not containing electrical heating elements as constituent parts." Yet Congress has enacted this phrase, and the court is reluctant to impute to the legislature the inclusion of meaningless or superfluous language in the statutes which it passes, and will not do so when a logical and conciliatory interpretation is available. Prosser & Son v. United States, 1 Ct.Cust.App. 550, T.D. 31551.

The legislative history of these two paragraphs serves to reconcile their apparent conflict and tends also to support the view that Congress did not intend paragraph 353 to preempt the classification of all articles having an essential electrical heating element. In Report No. 37 to accompany H.R. 2667 (the Tariff Act of 1930 in legislative form), the Senate Finance Committee set forth its views with respect to the proposed paragraph 353 as follows:

Electrical machinery and apparatus is now dutiable chiefly under several paragraphs as follows: Paragraph 372 as machinery, paragraph 399 as miscellaneous manufactures of metal, paragraph 368 as meters, and paragraph 339 as household utensils. Liti-

gation over the meaning of the term "machine" as applied to electrical equipment has resulted in transferring some products to the machinery paragraph and leaving similar products classified under paragraph 399. In many cases the more highly manufactured articles have thus been subjected to the lower rates, and in other cases, products of similar character have been declared dutiable at different rates. All these products, with the exception of such as are household utensils, lighting fixtures, or laboratory instruments, are now grouped together at a single rate.

The electrical heating element portion of paragraph 339 dates back to the Tariff Act of 1922 which imposed an additional duty of 10 per centum ad valorem on household utensils, *inter alia,* "containing electrical heating elements as constituent parts thereof." In the Tariff Act of 1930, the additional duty was eliminated and the phrase "whether or not containing electrical heating elements" was inserted. Clearly, this was no perfunctory reenactment of prior law. It indicates a considered conscious purpose to retain in paragraph 339 household utensils with electrical heating elements. Coupled with the statement in Senate Report No. 37, supra, this revision of paragraph 339 suggests that Congress was cognizant of the potential conflict between the two provisions here in issue and sought to resolve it by indicating its intent to continue to provide in paragraph 339 at least for those household utensils which are equipped with an electrical heating element.

The view that paragraph 339 continues to embrace household utensils with electrical heating elements as constituent parts, notwithstanding the provisions of paragraph 353, is supported by the case of Carey & Skinner, Inc. v. United States, 24 Cust.Ct. 347, Abstract 53949, wherein electric broilers, designed for broiling and otherwise preparing food for the table, were held properly classified in paragraph 339 as table utensils rather than in paragraph 353 as cooking stoves or ranges having as an essential feature an electrical heating element. The court noted, in so concluding, that the language of paragraph 339 regarding electrical heating elements militated against the removal of the broilers from that paragraph.

While it is true that *Carey & Skinner,* supra, was decided before the Court of Customs and Patent Appeals considered the interplay of these two provisions in United States v. Electrolux Corporation, 46 CCPA 143, C.A.D. 718, we do not believe that the later case alters the conclusion reached in the earlier decision. In United States v. Electrolux, supra, the court held that certain electrical floor polishers, admittedly chiefly used in the household, were, nevertheless, more specifically provided for in paragraph 353 as articles having as an essential feature an electrical element. While indicating that certain electrical household utensils were intended by Congress to be included in paragraph 353, the court was extremely careful to observe that it was not divesting paragraph 339 of all operation in the area of electrical household utensils, by stating:

> * * * It is not necessary or proper here to speculate as to what electrical appliances were intended to be left in paragraph 339 but it is possible that the continuation in that paragraph of the phrase "containing electrical heating elements as constituent parts," which was in the 1922 Act, has a bearing on the matter. * * *

Something other than an electrical heating element was a feature of the floor polishers involved in the *Electrolux* case, and the articles considered by this court in the cases applying the principle of that decision. In Bruce Duncan Company, a/c Sims-Worms v. United States, 45 Cust.Ct. 85, C.D. 2202, the household article held classifiable in paragraph 353 was a small electric vacuum brush. In Rotel Corp. of America et al. v. United States, 46 Cust.Ct. 538, Abstract 65798, it was an electric juicer.

Diligent research has not disclosed any instance wherein a household article with an electrical heating element only has

been held to be more specifically provided for in paragraph 353, and we are of opinion that a conclusion to that effect in the light of the phrase "whether or not containing electrical heating elements as constituent parts," in paragraph 339, would be wholly unwarranted.

In view of the foregoing consideration, we find the position of the plaintiffs to be without merit. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.

FORD, J., concurs.