KALAN INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 88–12–01200

(Decided December 1, 1988)

Sidney N. Weiss, for plaintiff.
John R. Bolton, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice (James A. Curley), for defendant.

## MEMORANDUM OPINION

TSOUCALAS, Judge: This action is before the Court to determine the appropriate classification of merchandise described in the entry papers as key tags. The merchandise consists of rectangular plastic, measuring 2½″ × 1⅜″ × ¼″ with any one of a number of whimsical phrases printed on it. A split metal ring ⅞″ in diameter is linked to the tag through a smaller metal link.

The merchandise, imported from the Republic of Korea (ROK) and entered through the port of Philadelphia, Pennsylvania on October 14, 1987, was liquidated under item 740.41, the Jewelry and Related Articles provision of the Tariff Schedules of the United States (TSUS):

> Jewelry and other objects of personal adornment not provided for in the foregoing provisions of this part (except articles excluded by headnote 3 of this sub-part), and parts thereof:

Valued over 20 cents per dozen pieces or parts:

\* \* \* \* \* \* \*

Other ........................................11% ad val.

Plaintiff, Kalan Inc. (Kalan), contests the classification and argues that the merchandise is properly classifiable under the Rubber and Plastics Products provision, item 774.58, TSUS:

Articles not specially provided for, of rubber or plastics:

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

Other ............... 5.3% ad val. (Free [for ROK under the Generalized System of Preferences])

### Discussion

In addressing the issue whether the imported merchandise is inclusive under item 740.41 or item 774.58, TSUS, the Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 878 (1984), *reh'g denied,* 739 F.2d 628 (Fed. Cir. 1984). Plaintiff bears the burden of overcoming the presumption of validity of the United States Customs Service's (Customs) classification. *Id.*

The initial question to be resolved is whether key rings and key chains are "alike," since headnote 2(a) of the Jewelry and Related Articles provision lists key chains as an exemplar:

2. For the purposes of this subpart—
 (a) the term *"jewelry and other objects of personal adornment"* (items 740.05 through 740.38 [sic], *includes* rings, earrings and clips, bracelets (including watch bracelets and identification bracelets), necklaces, neck chains, watch chains, *key chains,* brooches, tie pins and clips, collar pins and clips, cuff links, dress studs, buttons, buckles and slides, medals, military, fraternal and similar emblems and insignia (including those prescribed for military, police, or other uniforms), fobs, pendants, hair ornaments (including barrettes, hair-slides, tiaras, and dress combs), *and similar objects of personal adornment,* but *does not include—*

 (i) *articles described in headnote 2(b) of this subpart* \* \* \*
 (Emphasis in original in part and provided in part).

In contradistinction to Customs' position, Kalan maintains that the subject key rings are not like "key chains" nor are they "similar objects of personal adornment" identified in the foregoing headnote. *United States* v. *R.J. Saunders & Co.,* 45 CCPA 63, C.A.D. 674 (1958), decided under the repealed jewelry provision of the Tariff Act of 1939, upheld the classification of base metal key rings as key chains on the grounds that both served the similar function of hold-

ing keys together. In defining the scope of what may be appropriately designated as an article of jewelry or personal adornment, *Saunders'* similarity in function rationale is instructive because it demonstrates precisely the type of liberal interpretative rule that the 1960 revisions sought to avert. "The early judicial and administrative rulings tended to interpret the [now repealed] provisions * * * as broadly as possible, causing a number of base-metal articles of a purely utilitarian nature and having no relationship to the jewelry trade to be classified as jewelry and related articles." The United States Tariff Commission, *The Tariff Classification Study* 320, 321 (1960) (TCS).

To narrow the scope of items dutiable at higher tariff rates, the Jewelry and Related Articles provision of the Tariff Act of 1960 instituted a classificatory scheme whereby the goods are distinguished according to their functional traits *and* compositional characteristics. *TCS* at 320–24.

Headnote 2(a) covers all articles which serve an ornamental function of personal adornment, irrespective of their material content, and identifies key chains as an exemplar. A classificatory determination may not, however, rely exclusively upon a comparison with a single exemplar where multiple are listed. The Court must take into account the essential characteristics and purposes that unite the articles enumerated. *Nissho-Iwai American Corp.* v. *United States,* 10 CIT 154, 641 F. Supp. 808 (1986); *Kotake Co.,* v. *United States,* 58 Cust. Ct. 196, C.D. 2934, 266 F. Supp. 385 (1967). The meaning of "key chain" thus cannot be divorced from the commonalities that all the listed exemplars exhibit.

The detailed items under headnote 2(a) are articles that are meant to be worn or attached to the person or to wearing apparel for ornamental purposes. Further, these are goods which are sold through channels of the jewelry trade. *See TCS* at 321–23. At the hearing, Customs attempted to show that the message printed on the key rings has a significant ornamental value because "they are calculated to attract members of the opposite sex." *Defendant's Brief in Reply to Plaintiff's Opposition to the Cross-Motion for Summary Judgment* at 6. Louis Piropato, a National Import Specialist of the United States Customs Service, fastened the subject merchandise on his belt loop by means of application of an extrinsic clipping device. The endeavor illuminated, at best, that any object has the potential to be an item of ornament, by virtue simply of attachment to the person. The determinative test under headnote 2(a) is not, however, whether the item may have incidental decorative use, but rather whether this is its primary function. *See TCS* at 321–22.

Indeed, Customs does not dispute that the key rings are specifically designed to hold keys together to provide ease of accessibility. Additionally, the record does not contain any evidence that the subject merchandise is sold at jewelry stores or otherwise circulated through channels of the jewelry trade.

The key rings before the Court appear to be small non-precious utilitarian articles excepted from inclusion under the Jewelry and Related Articles provision. Headnote 2(b) states that: *"small [utilitarian] articles ordinarily carried in the pocket, in the handbag, or on the person for mere personal convenience"* (emphasis in original) will nonetheless be designated as jewelry if they are made:

> of precious metal (including rolled precious metal), of precious stones, of natural pearls, of precious metal (including rolled precious metal) set with semiprecious stones, cameos, intaglios, amber, or coral, or of any combination of the foregoing * * *

Superior Headnote to items 740.05 through 740.15, TSUS. Headnote 2(b) lists as exemplars:

> cigar and cigarette cases and holders, spectacle cases, coin purses, card cases, powder boxes, pocket combs, lipstick holders, money clips, and similar articles ordinarily carried in the pocket, in the handbag, or on the person for mere personal convenience, but does not include—
> (i) articles described in headnote 2(a) of this subpart * * *

Thus, the controlling factors under under headnote 2(b) are whether the disputed small article is "carried" for primarily utilitarian purposes and whether it contains precious or semi-precious material. *TCS* at 320–23.

The size of the key rings in question is comparable to the listed exemplars, such as cigar and cigarette cases, coin purses, card cases, and money clips. None, including the subject key rings, features an intrinsic device by which attachment to the person or apparel may ordinarily be accomplished. The key rings also share the distinguishing characteristic of ordinarily being "carried," rather than worn. Their unifying purpose is to facilitate retainment and mobility of regularly used small items, such as cigars and cigarettes, coins, cards, and keys.

In view of their predominantly utilitarian purpose, headnote 2(b) limits the inclusion of small articles under the Jewelry and Related Articles provision to those containing precious or semi-precious ingredients. The rationale for their inclusion is that their material composition imparts a "jewel-like" quality. Further, "[t]hese articles, when composed of precious metals or precious stones, are almost invariably produced by the jewelry industry and sold in channels of trade normally dealing with 'precious-metal' jewelry." *TCS* at 322. It is uncontroverted that the component material in chief value of the subject merchandise is plastic. Further, as noted above, they are not identified with the jewelry industry.

Under these circumstances, the subject product do not fall within the ambit of the Jewelry and Related Articles provision. Headnote 4 supports this finding:

Small articles ordinarily carried in the pocket, in the handbag, or on the person for mere personal convenience, which are not covered * * * [under headnote 2(b)] are provided for elsewhere in the schedules.

Non-precious items excludable under headnote 2(b) likewise may not be classified under 2(a).

The record does not support Kalan's remaining argument that Customs has a uniform and established practice of classifying articles such as those in issue under item 774.58, TSUS. Nine liquidations under this provision over a one-year period are insufficient to create such a practice. *See Siemens America, Inc.* v. *United States,* 692 F.2d 1382 (Fed. Cir. 1982) (approximately 100 entries over two years are insufficient); *Washington Handle Co.* v. *United States,* 34 CCPA 80, C.A.D. 346 (1946) (twenty-eight entries during one year are insufficient). However, since the foregoing discussion finds that the controverted small non-precious item is clearly one that is ordinarily carried by a person and serves a primarily utilitarian function, it cannot be brought under the Jewelry and Related Articles provision.

CONCLUSION

Plaintiff has met its burden by proving that plastic key rings in question are not properly classifiable under 740.41, TSUS. Their primary function is to serve the personal convenience of retaining keys and their component material in chief value is plastic. While the evidence is inadequate to conclude Customs has an established and uniform practice of classifying them under item 774.58, TSUS, the Court finds that the subject product is properly classifiable under item 774.58, TSUS.