In view of the foregoing, the protests are sustained. Judgment will issue accordingly.

(C.D. 4261)

VENETIANAIRE CORP. OF AMERICA *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 27, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Herbert P. Larsen* and *James Caffentzis*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The legal question presented in this case pertains to the proper classification, for customs duty purposes, of certain zippered mattress and pillow covers imported from Taiwan in 1963. The articles were classified by the customs officials as plastic household articles, not specially provided for, under item 772.15 of the Tariff Schedules of the United States, and were assessed with duty at 17 per centum ad valorem. Plaintiff has protested the classification, and claims that the imported articles are properly dutiable at the rate of 12½ per centum ad valorem under item 772.35 of the tariff schedules as "[c]urtains and drapes * * * table covers * * * furniture slipcovers; and like furnishings * * of rubber or plastics".

The following are the pertinent or competing provisions of the Tariff Schedules of the United States:

Classified under:

> "Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics:

772.15      Other _____ 17% ad val."

Claimed under:

772.35   "Curtains and drapes, including panels and valances; napkins, table covers, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing of rubber or plastics_____ 12.5% ad val."

The parties have stipulated that the articles at bar are in chief value of plastic. Consequently, the question presented is whether the plaintiff has borne its dual burden of proof that they have been incorrectly classified, and that they should have been classified as claimed. Since the articles are admittedly mattress and pillow covers, and are not enumerated in the claimed provision, the court must determine whether they are covered or embraced by the words "like furnishings".

Plaintiff asserts that the "instant plastic mattress and pillow covers resemble plastic table and furniture covers in many ways, including method of manufacture, form of material of which composed, appearance, use for protection, etc." (Plaintiff's brief, p. 10) Plaintiff, therefore, concludes that they meet the judicially established test for similarity, and should therefore be classified as "like furnishings" within item 772.35 of the tariff schedules. Plaintiff also contends that there is a "conclusively obvious legislative intent" that the articles at bar were intended to be classified as "like furnishings" under the claimed provision. The court does not agree, and holds that plaintiff has failed to bear its dual burden of proof.

The record in this case consists of the stipulation previously mentioned, certain exhibits, and the testimony of plaintiff's vice president. Two of plaintiff's exhibits consist of a plastic *table cover* and a plastic *furniture slipcover*, which, according to the testimony of the witness, were classified by the Bureau of Customs under the claimed provision, i.e., item 772.35 of the tariff schedules. Since these articles are specifically enumerated in the claimed provision, their classification under item 772.35 is to be expected. Mattress covers and pillow covers, however, are not enumerated, and the question therefore remains whether they are "like furnishings" within the intendment of that provision.

Plaintiff's witness testified that he purchased the controverted merchandise, and that he sold and distributed it in the United States. He stated that he personally used the merchandise and has seen it used in other people's homes. The function of the mattress and pillow covers is to provide protection from "dust, perspiration, urine [and] any other possible stains." He added that the covers are used while the mattresses and pillows are themselves in use.

In cross-examination, the witness stated that in normal use table covers and furniture slipcovers are visible, whereas mattress and pillow covers are hidden from sight and are not seen. On redirect examination, he explained that when he and his wife left their home, to travel in the Orient, his wife would not put sheets or pillow slips on the mattresses and pillows in his home. Under those circumstances, the imported plastic mattress and pillow covers would be visible.

The defendant, in its brief, points out that the articles enumerated in item 772.35 are articles commonly seen in the household, whereas the "merchandise at bar remains hidden from view in normal use." It adds that the witness only testified as to that which is a matter of common knowledge, that plastic mattress and pillow covers are normally covered by a sheet and pillow slip, respectively.

Defendant also notes that all of the articles enumerated in item 772.35 of the tariff schedule "are not confined in use to a particular area of the home" as are the mattress and pillow covers. Since mattress and pillow covers "are only associated with the bed", defendant submits that Congress "recognized the aforementioned dissimilarities, as is evidenced by a separate provision for bedding and bed furnishings in Schedule 3, Part 5, Subpart B, Headnote 1." (Defendant's brief, p. 4)

Although plaintiff indicates that the language of item 772.35 is almost identical with that of schedule 3, part 5, subpart C, headnote 1, which deals with textile furnishings, it offers no explanation for the separate classification and definition for "bedding" and "bed furnishings" in schedule 3. In its reply brief, plaintiff merely "submits that the defendant misconstrues the judicial function in this instance, which is to ascertain not *why*, but rather *what* the legislature did with respect to directing certain tariff treatment for certain articles." [Emphasis in original.] (Plaintiff's reply brief, p. 2)

In its effort to show that plastic mattress and pillow covers are "like" plastic table covers and furniture slipcovers, plaintiff has cited certain paragraphs from the *Summaries of Trade and Tariff Information*, Schedule 7, Volume 7, page 93 (1968), which indicate that the term "like" should be regarded as meaning "similar". The defendant, however, has called the court's attention to that same publication wherein it is stated that mattress and pillow covers are among some of the

more important imported articles of plastic housewares included under item 772.15 of the tariff schedules. *Id.* at 68–69.

The plaintiff responded to defendant's reference to the *Summaries of Trade and Tariff Information* by stating that "[w]hile it apparently constitutes an indication of the Tariff Commission's understanding of the scope of Item 772.15, it most certainly does not constitute an indication of the intent of *Congress* in this respect, and can not be regarded as a source of legislative history for the TSUS." [Emphasis in original.] (Plaintiff's reply brief, p. 2) Plaintiff concludes with the statement that the "instant classification error of the Bureau of Customs appears to be merely reflected by the Tariff Commission in the 1968 Summaries and should not thereby be perpetuated." (Plaintiff's reply brief, pp. 2–3)

In addition to the customs classification of the instant merchandise, plaintiff's reference to the classification error of the Bureau of Customs also refers to one of plaintiff's exhibits which consists of a ruling by the Bureau of Customs, dated October 24, 1963, circulated as C.I.E. 212/64 of February 5, 1964 and abstracted as T.D. 56102(10). This ruling states, in part:

> "Although the submitted samples [plastic mattress and pillow covers] are protective covers, they are not used on furniture. Consequently, the Bureau does not believe that they are the type of merchandise intended to come within the provision of Item 772.35.
>
> "It is the opinion of the Bureau that these plastic pillow and mattress covers are classifiable under the provision for * * * household articles not specially provided for; * * * of plastics: * * * Other, in item 772.15 of the Tariff Schedules of the United States, and dutiable at the rate of 17 percent ad valorem."

Quite apart from any persuasive effect of the Bureau ruling, and the statement found in the *Summaries of Trade and Tariff Information*, it can not be doubted that plaintiff has not borne its dual burden of proof. In conclusory fashion it asserts that the "admitted fact that the instant plastic articles are not used on furniture is of no moment." (Plaintiff's brief, p. 8.) It has not demonstrated to the satisfaction of the trier of the facts that the mattress and pillow covers are "like furnishings" similar to and *ejusdem generis* with the table covers and furniture slipcovers enumerated in the claimed item 772.35 of the tariff schedules. See *Joanna Western Mills Company* v. *United States*, 64 Cust. Ct. 218, 235–36, C.D. 3983, 311 F. Supp. 1328, 1341 (1970). Also, although plaintiff asserts with equal vigor that "there is a clearly expressed legislative intent to classify the articles at bar" under item 772.35, no persuasive evidence has been introduced to permit the court to make such a finding. Indeed, the administrative interpretation of

the pertinent provision seems uniformly to be to the contrary. See *National Labor Relations Board* v. *Hearst Publications, Inc.*, 322 U.S. 111, 64 S. Ct. 851 (1944) ; *United States* v. *American Trucking Associations, Inc.*, 310 U.S. 534, 60 S. Ct. 1059 (1940) ; *Udall* v. *Tallman*, 380 U.S. 1, 16, 85 S. Ct. 792 (1965). Moreover, all of the materials submitted in this case tend to support the contention of the defendant that its interpretation of the applicable provisions gives "full recognition to Congress's [sic] intent to classify bedding separately from other furnishings." (Defendant's brief, p. 5.)

The statement made by the Court of Customs and Patent Appeals in the case of *United States* v. *National Starch Products, Inc.*, 50 CCPA 1, 5, C.A.D. 809 (1962), is particularly applicable to the case at bar:

> "Unless there is substantial evidence in the record to establish the propriety of the protestant's asserted classification of the imported merchandise, the protest must be overruled and it is unnecessary to consider whether or not the collector's classification is wrong."

On the dual burden of proof of the plaintiff, also applicable is much of the discussion found in the more recent case of *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004 (1970). The *New York Merchandise Co.* case declares that the presumption that prevails in a customs classification case, that the merchandise has been properly classified, "has evidentiary weight, in and of itself." 58 CCPA at 58. The court therein also stated that the "presumption is not rebutted and the burden of coming forward does not shift until the importer has submitted substantial evidence tending to prove not only that the original classification by the Collector of Customs was erroneous, *but also* that some specific alternative classification is proper." [Emphasis in original.] 58 CCPA at 58. In the present case, since plaintiff has not borne this dual burden of proof, the presumption of correctness that attaches to the classification of the customs officials has not been rebutted.

After due consideration of the materials cited by the parties in their briefs, it is the determination of the court that plaintiff's claim of illegality of duty assessment under item 772.15 of the tariff schedules is without merit.

In view of the foregoing, the protest is hereby overruled. Judgment will issue accordingly.