60 CCPA

**VENETIANAIRE CORP. OF AMERICA,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**
*Customs Appeal No. 5479.*

United States Court of Customs and Patent Appeals.
Jan. 11, 1973.

1. Serial No. 270,834 filed May 5, 1967.

2. No. 294,218 of May 24, 1932.

Sharretts, Paley, Carter & Blauvelt, New York City, attys. of record, for appellant. Eugene F. Blauvelt, New York City, of counsel.

Harlington Wood, Jr., Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, James Caffentzis, New York City, for United States.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the United States Customs Court, First Division,[1] overruling the importer's protest to the classification of certain mattress and pillow covers, as "other" plastic household articles not specially provided for, under item 772.15, TSUS. The mattress and pillow covers have zippers, and are stipulated to be in chief value of plastic. The importer contends that the merchandise is properly classified under TSUS item 772.35 as plastic furnishings "like" those specially provided for in that item. We agree with the importer, and reverse the decision and judgment of the Customs Court.

The statutory provisions read in pertinent part as follows:

*Classified under:*
> Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics:
>
> 772.15 Other ..................... 17% ad val.

*Claimed under:*
> 772.35 Curtains and drapes, including panels and valances; napkins, table covers, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing of rubber or plastics .. 12.5% ad val.

The imported mattress and pillow covers were cut to size from rolls of solid sheet vinyl plastic, heat sealed, and fitted with a zipper. The record shows that the merchandise is used in the home to protect mattresses and pillows from dust, perspiration and other possible stains, and that in such use they are normally covered by ordinary textile bedsheets and pillow cases. Exhibits 2 and 3 are illustrative of the imported merchandise. Exhibits 4 and 5 are samples of plastic table covers and plastic furniture covers which testimony establishes were imported by appellant and classified by Customs under item 772.35.

It is apparent that the imported articles are not specifically enumerated in item 772.35. The question is whether they are embraced by the words "like furnishings" appearing in that item. It has not been controverted that the present plastic mattress and pillow covers are indeed "furnishings." *Cf.* Joanna Western Mills Co. v. United States, 64 Cust. Ct. 218, 234–237, 311 F.Supp. 1328, 1339–1342, C.D. 3983 (1970). However, after summarizing arguments of counsel, quoting from a 1963 Bureau of Customs ruling,[2] and considering certain state-

1. 67 Cust.Ct. ——, C.D. 4261 (1971).

2. The ruling is abstracted at 99 Treas.Dec. 65, T.D. 56102 (1968), and reads in pertinent part as follows:
> Although the submitted samples [plastic mattress and pillow covers] are pro-

tective covers, they are not used on furniture. Consequently, the Bureau does not believe that they are the type of merchandise intended to come within the provision of Item 772.35.
> It is the opinion of the Bureau that these plastic pillow and mattress covers

ments from the 1968 Summaries of Trade and Tariff Information,[3] the Customs Court concluded that the importer "has not borne its dual burden of proof," stating:

> It has not demonstrated to the satisfaction of the trier of the facts that the mattress and pillow covers are "like furnishings" similar to and *ejusdem generis* with the table covers and furniture slipcovers enumerated in the claimed item 772.35 of the tariff schedules. * * *

### Opinion

■ As a preliminary matter, we agree with the importer that it can satisfy its "dual burden of proof," necessary to overturn the presumption of correctness attendant the original classification in the present circumstances, if it satisfactorily proves the imported articles to be furnishings "like" those specially provided for in item 772.35. Item 772.15 is limited, for the purposes of this case, to household articles "not specially provided for." Thus evidence that item 772.35 is satisfied is *ipso facto* also evidence that item 772.15 is not pertinent.

■ We further agree with the importer that it has established that the imported mattress and pillow cover furnishings are "like" the plastic table covers and furniture covers specially provided for in item 772.35. Examination of Exhibits 2 and 3, the illustrative samples of the imported plastic mattress and pillow covers, shows them to be almost identical, in materials of construction and general appearance, to Exhibits 4 and 5, the plastic table and furniture covers which testimony shows are exemplary of furnishings classified in item 772.35. The evidence is uncontroverted that Exhibits 2, 3, 4 and 5 are all employed for like functions and purposes—namely, as protective coverings for the

articles upon which they are used in the home. The appellee acknowledges in its brief that:

> [T]he furnishings included in item 772.35, TSUS, are those commonly used throughout the home, either for decorative or protective purposes. * * *

We think that that statement applies as well to protective plastic mattress and pillow covers as it does to the other furnishings specially enumerated in item 772.35.

On this record, we are unable to agree with the appellee's apparent conclusion that the imported furnishings are basically unlike those enumerated in item 772.35. Appellee has recognized that the 1963 Bureau of Customs ruling and the statements in the 1968 Summaries of Trade and Tariff Information alluded to by the Customs Court "are not binding on the court." Those materials are patently insufficient to establish that there had been any long-standing practice with regard to plastic mattress and pillow covers when the merchandise at bar was imported in 1963.

Appellee's main argument appears as follows in its brief:

> In creating the provisions for various products of rubber or plastics included in Subpart C, Part 12, Schedule 7, Congress created certain superior headings paralleling comparable headings in schedules of provisions based on other component materials. Tariff Classification Study, Schedule 7 (1960), p. 451. The provision for furnishings of plastics, item 772.35, TSUS, is nearly identical to the provisions for furnishings of textile materials found in Schedule 3, Part 5, Subpart C. The furnishings of textile materials provisions do not include any "bed furnishings," such as mattress and pillow covers, inasmuch as Con-

---

are classifiable under the provision for * * * household articles not specially provided for; * * * of plastics; * * * Other, in item 772.15 of the Tariff Schedules of the United States, and dutiable at the rate of 17 percent ad valorem.

3. As the Customs Court pointed out, that publication indicates that "mattress and pillow covers are among some of the more important imported articles of plastic housewares included under item 772.15 of the tariff schedules."

## 1050

gress created separate provisions for such furnishings in Subpart B, Part 5, Schedule 3. Appellee submits that this separate and distinct treatment is based upon an obvious dissimilarity between "bed furnishings" and other types of "furnishings." The latter are not confined in use to a particular area of the home, whereas the former are only associated with the bed.

\*     \*     \*     \*     \*     \*

If plastic mattress and pillow covers are classified as furnishings "like" those enumerated in item 772.35, TSUS, no harmonious results are achieved inasmuch as mattress and pillow covers of textile materials are denied that same status in Schedule 3. The Customs Court seems to have been influenced in its decision by a similar argument below, since it stated that:

> Moreover, all of the materials submitted in this case tend to support the contention of the defendant that its interpretation of the applicable provisions gives "full recognition to Congress's [sic] intent to classify bedding separately from other furnishings."

We agree with the appellee that the provisions of the Tariff Schedules must be considered *in pari materia*. In our view, however, the mere fact that Congress has made separate provision for textile bedding or bed furnishings in Subpart B, Part 5, Schedule 3 apart from the provision for other textile furnishings in Subpart C, Part 5, Schedule 3 is no clear expression of intent to classify the plastic bed furnishings at bar apart from the other plastic furnishings set forth in item 772.35. Congress could have made separate provision for plastic bed furnishings in Schedule 7, but it did not do so. We consider the similarities in language between the pertinent parts of Schedule 7 and Schedule 3 to be insufficient to establish any Congressional intent "to classify bedding separately from other furnishings" as a general proposition.

The decision and judgment of the Customs Court is reversed.

Reversed.