**DITBRO PEARL CO., INC.**
**v.**
**UNITED STATES.**
C.D. 4497; Court No. 71-5-00113.

United States Customs Court.
Jan. 16, 1974.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and Irving Levine, New York City, of counsel), Rode & Qualey, New York City (John S. Rode, New York City, of counsel) associate counsel, for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial attorney), for defendant.

LANDIS, Judge:

This case involves the tariff classification of merchandise consisting of six assorted styled so-called chain belts imported from West Germany and entered at New York on January 8, 1970. The chain belts, finished in gold color and concededly in chief value of aluminum (R. 8) not coated or plated with precious metal (exhibit 1), are of a decorative style and kind worn by women around the waist or hips in fashionable dress.

Defendant (the government) classified the chain belts under the TSUS (Tariff Schedules of the United States) heading, "Jewelry and other objects of personal adornment * * *," item 740.-

38, dutiable at 38 per centum ad valorem.

Plaintiff contends, as appears from the complaint: (1) that the chain belts should have been classified under the TSUS heading, "Chain and chains * * *," item 652.38, dutiable at 13 per centum ad valorem; (2) that the chain belts should alternatively have been classified under the TSUS heading, "Articles of aluminum, not coated * * *," item 657.40, also dutiable at 13 per centum ad valorem; (3) that the chain belts should have been classified under TSUS heading heretofore claimed, viz: 652.38 because of an established and uniform practice in effect at the time of importation under which ladies' aluminum belts consisting of a length of aluminum chain with a small brass hook attached to one end of each length were classified under said item 652.38, and which established and uniform practice had not been changed as provided by section 315, Tariff Act of 1930, as amended.[1]

The pertinent headnotes and applicable sections of TSUS under which the merchandise was classified are as follows:

Schedule 7.—Specified Products; Miscellaneous and Nonenumerated Products

Part 6.—Jewelry and Related Articles; Cameos; Natural, Cultured, and Imitation Pearls; Imitation Gemstones; Beads and Articles of Beads

*    *    *    *    *    *

Subpart A.—Jewelry and Related Articles

*Subpart A headnotes:*

1. This subpart covers *jewelry and other objects of personal adornment,* small articles ordinarily carried in the pocket, in the handbag, or on the person for mere personal convenience, certain religious articles, and certain parts and materials. This subpart does not cover—[Emphasis added.]

(i) luggage (see part 1D of this schedule),

(ii) watches (see part 2E of this schedule),

(iii) brushes (see part 8A of this schedule),

(iv) cigar or cigarette lighters or articles in which cigar or cigarette lighters are incorporated as integral parts (see part 9B of this schedule),

(v) pens or pencils (see part 10 of this schedule),

(vi) hand fans (see part 13A of this schedule), or

(vii) manicure implements, pocket knives, and similar articles (see part 3E of schedule 6).

2. For the purposes of this subpart—

(a) the term *"jewelry and other objects of personal adornment"* (items 740.05 through 740.38), includes rings, ear-rings and clips, bracelets (including watch bracelets and identification bracelets), necklaces, neck chains, watch chains, key chains, brooches, tie pins and clips, collar pins and clips, cuff links, dress-studs, buttons, buckles and slides, medals, military, fraternal and similar emblems and insignia (including those prescribed for military, police, or other uniforms), fobs, pendants, hair ornaments (including barrettes, hair-slides, tiaras, and dress combs), and similar objects of personal adornment * * *

*    *    *    *    *    *

3. Items 740.30 through 740.38 cover articles described in headnote 2(a) of

[1]. Section 315(d) provides as follows:

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties. * * *

this subpart, except buttons, buckles, and slides, and hair ornaments (see parts 7A and 8A of this schedule).

\*    \*    \*    \*    \*    \*

Jewelry and other objects of personal adornment \* \* \*, and parts thereof:

\*    \*    \*    \*    \*    \*

\* \* \* Valued not over 20 cents per dozen pieces or parts ............... \* \* \*

Valued over 20 cents per dozen pieces or parts:

Watch bracelets:

\* \* \* Valued not over $5 per dozen ..... \* \* \*

\* \* \* Valued over $5 per dozen ......... \* \* \*

740.38    Other ........38% ad val.

Plaintiff's claimed classification items 652.38 and 657.40 appear in TSUS schedule 6, part 3, subparts F and G. The relationship of subpart A (schedule 7, part 6), *supra*, to subparts F and G is definitively treated in the classification headnotes to items 652.38 and 657.40, in relevant context as follows:

Schedule 6.—Metals and Metal Products

Part 3.—Metal Products

Subpart F.—Miscellaneous Metal Products

*Subpart F headnote:*

1. The provisions of this subpart do not include—

(i) Chain or chains provided for in part 6A of schedule 7 [*supra*];

\*    \*    \*    \*    \*    \*

Chain and chains, and parts thereof, all the foregoing of base metal not

coated or plated with precious metal:

\*    \*    \*    \*    \*    \*

\* \* \*   Of copper ............. \* \* \*

652.38    Other ...........13% ad val.

\*    \*    \*    \*    \*    \*

Subpart G.—Metal Products Not Specially Provided For

*Subpart G headnote:*

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*    \*    \*    \*    \*    \*

657.40    Articles of aluminum, not coated or plated with precious metal    13% ad val.

The above TSUS headnotes have the force of law. It is readily apparent, reading the headnotes, that if the imported chain belts are in the tariff sense of TSUS "jewelry and other objects of personal adornment," they cannot be classified, as plaintiff claims, under either item 652.38 or 657.40. Since chain belts are not objects specifically included in the definition of the term "jewelry and other objects of personal adornment," the only issue is whether they are objects of personal adornment similar to those included by specific designation thereof. Cf., Gallagher & Ascher v. United States, 6 Ct. Cust.Appls. 105, 107, T.D. 35343 (1915).

The evidence in this case consists of testimony [2] and various exhibits.

The exhibits,[3] consisting of various commercial ads promoting the sale of leather belts and chain-type necklaces and belts, establish that there are leather belts "[e]ssential with jeans, trousers, pants of all persuasions" that are orna-

---

2. Four witnesses, all men *inter alia* engaged in marketing women's fashion accessories, including costume jewelry and belts made of different materials, testified for plaintiff. Five witnesses, all women variously employed, testified for defendant.

3. Collective exhibit 2 is a collection of purchase orders, produced by plaintiff on defendant's subpoena, for chain belts of the kind imported. The business letterheads on a representative number of the purchase orders contain reference to the customers' jewelry business.

mented with floral or geometric designs (exhibit 3); chain decorative objects that are worn in the manner of a belt (exhibits A and E); decorative chain objects worn as a necklace (exhibit B); and decorative chain objects that can be worn as a necklace, a bracelet, or in the manner of a belt (exhibits C and D).

All the witnesses testified that the imported chain belts were worn by women, with dresses or pants suits, loosely around the waist or the hips in the manner of a belt. With full styled dresses or blouses, the chain belts can be cinched around the waist in a manner that accentuates the line of a woman's figure.

Plaintiff's witnesses testified that the chain belts are belts and stated that as they are worn in the manner of a belt, they are not objects of personal adornment because they function as a belt to style a dress or a pants suit, or complete an outfit.[4]

Defendant's witnesses also testified that chain belts are fashionable decorative objects but chose to emphasize that they wear their belts in the manner of a belt not to support anything, but merely to achieve what they ascribed would be a "coordinated, polished look" (R. 110)—"a total look" (R. 119)—"to look pretty and brighten up an outfit" (R. 125)—"to dress up an outfit, to add class to the outfit" (R. 137).

A belt is defined in the lexicons as follows:

*Webster's Third New International Dictionary, 1968 ed.:*

[A] strip of flexible material (as leather, plastic, cloth) used in a circular form with or without a buckle or other closing and for wear generally around the waist (as a support for trousers, *a decoration for dresses* [emphasis added], or a means of carrying weapons, tools, or ornaments) * * *.

*The American Heritage Dictionary of the English Language (1970):*

A band of leather, cloth, or other flexible material, worn around the waist to support clothing, secure tools or weapons, or serve as *decoration.* [Emphasis added.]

The chain objects in this case are of metal material consisting of individual decorative pieces linked together to make them flexible. At one end of the chain is a closure hook. The record establishes that in descriptive parlance the objects are chain belts. While I am of the opinion that a chain belt worn around the waist is a belt in the common meaning of the term, it does not follow that the imported chain belts are not articles of personal adornment, similar to the objects specifically included in the statutory definition.

Chain belts, as plaintiff observes, are not specifically included (as are neck chains, watch chains, key chains) in the statutory definition of "jewelry and other objects of personal adornment." There is no gainsaying plaintiff's statement, therefore, that if chain belts are to be included in the definition they must be objects of personal adornment similar to those specifically included. The crunch of those observations is plaintiff's assertion that chain belts are in no way similar to neck chains, watch chains, key chains or any of the other objects specifically included in the definition and, for that matter, that they are not objects of personal adornment except in the same sense as ladies' clothing in general. The assertion appears to be

---

4. The ambiguous tenor in which plaintiff's witnesses testified to the function of belts is pointed up in the cross-examination of plaintiff's witness Weinberger, who testified as follows:

Q. In your opinion, then, decoration is not the primary object of chain belts, is that correct?—A. That is correct.

Q. What is the primary purpose?—A. The primary purpose is to act as a belt, whatever the function and use of a belt is.

Q. Aren't most women's belts decorative?—A. I cannot say whether most of them are or are not. I would assume that every woman wants to feel whatever she wears is for decorative purposes. [R. 59–60.]

partially woven in argument that chain belts are not *ejusdem generis* with the objects specifically included in the statutory definition.

Ejusdem generis is a rule of construction invoked, where legislative intention is in doubt or beclouded by ambiguity, as an aid in ascertaining the intention of the legislature. It is not invoked to narrow, limit or circumscribe an enactment and never invoked if the intention of the legislature can be ascertained without resort thereto. [Sandoz Chemical Works, Inc. v. United States, 50 CCPA 31, 35, C.A.D. 815 (1963).]

Plaintiff's argument of the *ejusdem generis* rule is not very clearly developed, and to the extent it is, it is difficult to follow in terms of the law and facts in this case. To merely submit, as plaintiff does, that the imported chain belts are not *ejusdem generis* with jewelry and other objects of personal adornment, because chain belts are manifestly not any of the objects specifically included in the statutory definition, is to unnecessarily and not very convincingly apply the rule to that which is obvious from the facts and unambiguous in the statutory definition. In the follow-up to its next statement "[n]or are they [chain belts] 'similar' objects; nor are they even 'objects of personal adornment' except in the same sense as ladies' clothing in general," plaintiff abruptly turns away from the *ejusdem generis* rule to argument as to the function of the imported chain belts.

Plaintiff purports that the testimony of defendant's witnesses merely implies the chain belts are worn to decorate the clothing in a manner similar "to the use of necklaces, brooches and other articles enumerated" in the statutory definition. Having thus characterized the testimony, plaintiff next says it is clear, however, that neither necklaces nor brooches can possibly be used for the principal function of a chain belt, namely, to "cinch"

the waist in a lady's garment, to give it shape, or to function as a belt. With this background, plaintiff advances the contention that a review of the cases decided under tariff acts (prior to TSUS) involving provisions which were considered in drafting the TSUS schedule for jewelry and related articles,[5] "is persuasive that functional articles such as belts were not intended to fall within the scope of the term 'jewelry and other objects of personal adornment.'" (Plaintiff's main brief, page 26.)[6] Defendant in opposition to those points of plaintiff's brief embellishes its argument of the facts and case decisions with a discussion of the legislative history of the provision for "jewelry and other objects of personal adornment."[7]

Whatever else may be said of plaintiff's stance with regard to the function of the imported chain belts and case decisions under prior tariff acts distinguishable from TSUS (see, United States v. Astra Trading Corp., 44 CCPA 8, 14, C.A.D. 627 (1956)), it suffices here to say that the court is not required to give opinions on abstract propositions not supported by the evidence in the case, Brooks v. Marbury, 11 Wheat. 78, 24 U.S. 78, 94, 6 L.Ed. 423 (1826); Sullivan v. Iron Silver Mining Company, 109 U.S. 550, 554, 3 S.Ct. 339, 27 L.Ed. 1028 (1883). Plaintiff's statement that these imported chain belts are functionally dissimilar objects from those specifically included in the statutory definition is not, in my opinion, supported by the evidence in the case.

Contrary to what plaintiff says about the implications of defendant's testimony, the weight of all the testimony (including the testimony of plaintiff's witnesses) preponderantly establishes that women wear the imported chain belts around the waist or hips and that so worn the chain belts are decorative and personally adorning. The chain belts in evidence bear potent witness to their decorative and adorning character.

5. Tariff Classification Study, Schedule 7, page 320.

6. Plaintiff also filed a reply brief.

7. Tariff Classification Study, n. 5.

None of the rings, earrings, etc. included in the statutory definition of "jewelry and other objects of personal adornment" have any related function to each other than I can discern. It is immaterial, therefore, that the rings, earrings, etc. included in the definition cannot be cinched around the waist in the manner of a belt, to give style or shape to a lady's garment. Style, shape, "to complete a garment," terms which plaintiff's witnesses chose to express their opinions on the function of the imported chain belts are handmaidens of the same personal adornment that defendant's witnesses testified to in more colorful personal terms. Men wear tie pins and clips for no less reason, than women wear chain belts, to add to their style and to complete their outfit. In short, none of the expressed functions of these chain belts, in the manner they are worn around the waist and hips, are inconsistent with their obvious character as objects of personal adornment. Substantively, therefore, I find that the evidence supports the presumption of correctness attaching to the customs classification of the imported chain belts as "jewelry and other objects of personal adornment" under TSUS item 740.38.

What remains for consideration is plaintiff's claim that the classification of the chain belts as "jewelry and other objects of personal adornment" represented a change in a prior uniform and established practice classifying chain belt as chains under item 652.38, done without notice in violation of section 315(d) of the Tariff Act of 1930, as amended.[8]

■ The threshold question under section 315(d) is whether the Secretary of the Treasury or his representative found an applicable established and uniform practice classifying the imported chain belts under TSUS item 652.38. Cf.

Commonwealth Oil Refining Company, Inc. v. United States, 60 CCPA 162, C.A.D. 1105, 480 F.2d 1352 (1973). What plaintiff cites and relies on as such a finding is one of twenty-one "abstracts of Bureau of Customs decisions of general interest * * * published as a matter of information and guidance" in the volumes entitled Customs Bulletin, which reads as follows:[9]

T.D. 68–77(3) *Chains of base metal. Chain belts.*—Aluminum ladies belts, consisting of 36 inch lengths of aluminum chain with a small brass hook attached to one of each length, classifiable under the provision for Chain and chains * * * of base metal not coated or plated with precious metal: * * * Other, in *item 652.38*, TSUS. Bureau letter dated February 19, 1968. * * *

Notwithstanding the decision in Borneo Sumatra Trading Co., Inc. v. United States, 56 Cust.Ct. 166, 173, C.D. 2624 (1966) (holding that an abstract of an unpublished Bureau decision, published in the volumes entitled "Treasury Decisions," is not a decision, does not establish a uniform practice, and requires no notice of change in practice),[10] plaintiff submits that the abstracted Bureau decision T.D. 68–77(3), *supra*, is precisely the type of finding Congress was referring to when it adopted section 315 (d).

T.D. 68–77(3) represents one of twenty-one Bureau decisions abstracted under T.D. 68–77. Abstracted Bureau classification decisions are frequently published in the weekly "Customs Bulletin," a new title for the publication previously known as the "Weekly Treasury Decisions." (See, 1 Customs Bulletin 1, T.D. 67–1.) The Bureau classification decisions so abstracted literally number in the hundreds in a period of months. Plaintiff cites no case and I

8. N. 1.

9. 2 Customs Bulletin 157, T.D. 68–77 (1968).

10. Plaintiff is of the opinion that the court of appeals in Asiatic Petroleum Corp. v.

United States, 59 CCPA 20, C.A.D. 1029, 449 F.2d 1309 (1971), implicitly overruled *Borneo Sumatra*.

find none which sustains the general proposition that the mere publication of a Bureau abstracted decision on the classification of merchandise establishes a uniform practice for classifying the merchandise and requires a subsequent notice under section 315(d) if the practice is to change. The regularity with which such abstracted decisions are published and the lack of litigation, except for *Borneo Sumatra, supra,* would seem to reflect a consensus, at least among those engaged in customs matters, that the general proposition contended for by plaintiff is not sustainable.

Plaintiff's contention, it will be noted, concerns an established practice in the statutory sense that it cannot be changed without due notice under section 315(d). Section 315(d) requires a notice only when there is an "administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice."

Plaintiff, in pressing its contention, rests its case on the statement that "the formal classification rulings [i. e. abstracted Bureau decisions] of the Bureau of Customs are precisely the type of 'findings' to which Congress was referring when it adopted section 315(d)." (Plaintiff's main brief, page 38.) But, cf. United States v. S. Shapiro & Sons, 24 CCPA 343, 348, T.D. 48771 (1937) (holding that the abstracted decision in T.D. 46106(4), 63 Treas.Dec. 70, that certain rags contain no mingled quantities of paper stock segregable under section 508 of the 1930 Tariff Act, was "without warrant of law and of no binding force insofar as it in effect attempts to classify merchandise before importation regardless of the actual facts with reference thereto."). There is, however, nothing cited to support plaintiff's statement and quite obviously, by itself, abstracted decision 68–77(3) conveys no clear impression that it is intended as a "finding" of an established practice or "ruling" establishing a uniform practice. Cf. Asiatic Petroleum Corp. v. United States, 59 CCPA 20, C.A.D. 1029, 449 F. 2d 1309 (1971); Martin Brokerage Company v. United States, 36 Cust.Ct. 35, 39, C.D. 1750 (1956). Most recently the court of appeals held a 1963 Bureau ruling, abstracted as T.D. 56102(10), 99 Treas.Dec. 65, with respect to the classification of plastic mattresses and pillow covers, *"not* binding on the court" (emphasis added), and "patently insufficient to establish that there had been any long-standing practice" with regard to the classification of the plastic covers at the time of importation in 1963. Venetianaire Corp. of America v. United States, 60 CCPA 75, ——, C.A.D. 1084, 470 F.2d 1047 (1973).

For the reasons herein discussed, plaintiff's action is dismissed.

Judgment will enter accordingly.