ECONOMY COVER CORP.

v.

UNITED STATES.

C.D. 4645;  Court No. 75-1-00253.

United States Customs Court.

April 6, 1976.

Shaw & Stedina, New York City (Charles P. Deem, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Robert B. Silverman, New York City, trial atty.), for defendant.

RE, Judge.

The question presented in this case pertains to the proper classification, for customs purposes, of certain merchandise exported from Hong Kong and Taiwan, and entered at the port of New York. The merchandise from Hong Kong is described as "plain polyethylene suit covers," and that

from Taiwan as "crystal transparent covers." Both the suit covers, commonly known as overlap covers, and the transparent covers, known as shoulder covers, are plastic covers used as protective coverings for clothing. Since there is no genuine factual issue to be tried, the parties, pursuant to rule 8.2 of the rules of this court, have moved for summary judgment.

The merchandise was classified as "[a]rticles not specially provided for, of rubber or plastics," under item 774.60 of the Tariff Schedules of the United States [TSUS], as modified by Presidential Proclamation 3822, T.D. 68–9, and was consequently assessed with duty at the rate of 8.5 per centum ad valorem.

Plaintiff contests that classification, and claims that the merchandise is more specifically provided for in item 772.35 TSUS, as modified, *supra*, and therefore should have been assessed with duty at the rate of 6 per centum ad valorem.

For purposes of convenience the competing provisions of the tariff schedules may be set forth as follows:

Classified:

"Articles not specially provided for, of rubber or plastics:

&ast; &ast; &ast; &ast; &ast; &ast;

| 774.60 | Other ............. | 8.5% ad val." |

Claimed:

| 772.35 | "Curtains and drapes, including panels and valances; napkins, table covers, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing of rubber or plastics ....... | 6% ad val." |

It is clear that the overlap and shoulder covers are not a form of any of the articles specifically set forth *eo nomine* in item 772.-35. Plaintiff, nevertheless, moves for summary judgment because it claims that they are embraced by the words "like furnishings" in item 772.35.

The defendant contends that since the plastic clothes covers are not *ejusdem generis* with the articles enumerated in item 772.35, they are not "like furnishings," and

were properly classified. Defendant, consequently, cross-moves for summary judgment sustaining the classification, and denying plaintiff's motion.

Since there is agreement as to the nature and purpose of the protective plastic covers, the question presented is whether they were properly classified, as claimed by defendant, or whether they are "like furnishings" within item 772.35, as claimed by plaintiff.

■ It is the determination of the court that the overlap and shoulder covers are not *ejusdem generis,* i. e., of the same kind or class, as the other articles specifically enumerated in item 772.35. Since they are not "like furnishings," within the intendment of that item, plaintiff's claim must fail.

■ The doctrine of *ejusdem generis,* as an aid in the construction of statutes, is utilized frequently in the consideration of the tariff laws of the United States. It is a specific application or illustration of the broader maxim *noscitur a sociis,* i. e., known by its associates. This maxim is designed to teach that the meaning of a word may be known or revealed by the words with which it is accompanied or associated. Hence, when general and specific words are associated, not only may their meaning be gleaned from each other, but also, the meaning of the general words may be limited or restricted to the sense or category of the specific words.

In essence, *ejusdem generis* means that when general words in a statute follow a specific enumeration of persons or things, the general words are not to be construed in their widest sense or meaning, but rather are to be limited, or held to apply, only to persons or things of the same kind or class as those specifically enumerated.

An examination of the specifically enumerated articles preceding the words "like furnishings," in item 772.35 of the schedules, reveals that the plastic clothing covers at bar are not of the same class or kind. Notwithstanding their ostensible similarity they do not possess the essential character-

istic or purpose which is common to the articles enumerated *eo nomine.*

Much ground has already been covered by the prior decisions in this area, and only a few broad markers need be highlighted. See *Venetianaire Corp. of America v. United States,* 470 F.2d 1047, 60 CCPA 75, C.A.D. 1084 (1973); *Venaire Shade Corp. v. United States,* 66 Cust.Ct. 469, C.D. 4235 (1971); *Joanna Western Mills Company v. United States,* 311 F.Supp. 1328, 64 Cust.Ct. 218, C.D. 3983 (1970); *Kotake Co., Ltd., American Customs Brokerage Co. v. United States,* 266 F.Supp. 385, 58 Cust.Ct. 196, C.D. 2934 (1967).

Research as to the meaning of the words "like furnishings" may conveniently commence with the case of *Morimura Bros. v. United States,* 2 Ct.Cust.Appls. 181, T.D. 31941 (1911). In the *Morimura* case, the appellate court distinguished "furniture," "house furniture" and "house furnishings," as follows:

"The term 'furniture' as ordinarily used may mean that with which anything is furnished, supplied, or equipped. House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped. House furniture, in these modern times, has come to denote those articles of household utility which were formerly made of wood and which are designed for the personal use, convenience, and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned." 2 Ct.Cust.Appls. at 182.

The case of *Sprouse Reitz & Co., Frank P. Dow Co., Inc. v. United States,* 332 F.Supp. 209, 67 Cust.Ct. 209, C.D. 4276 (1971) refers to some of the meanings of the noun "furniture" under the various tariff acts, and the

cases that have construed the term.[1] Although it has been stated that the term "furniture" is one of "broad signification" (*Necchi Sewing Machine Sales Corp. et al. v. United States,* 30 Cust.Ct. 1, 3, C.D. 1489 (1952)), under the Tariff Act of 1930 "house furnishings" remained limited to articles of ornamentation. See *Furniture Import Corp. v. United States,* 56 Cust.Ct. 125, C.D. 2619 (1966); *Fabry Associates, Inc. v. United States,* 45 Cust.Ct. 88, C.D. 2203 (1960).

In 1970, in the *Joanna Western Mills* case, this court noted that the words "like furnishings," in item 772.35 of the tariff schedules, were new, and that prior cases, decided under the Tariff Act of 1930, were not dispositive of their meaning. The court, construed the word "furnishings" in the light of the new enactment, and concluded that, "when used in the tariff schedules, [it] cannot be limited on the basis of the presence or absence of ornamentation." Basing its construction also on other provisions of the tariff schedules, and the case of *Barth & Dreyfuss v. United States,* 62 Cust.Ct. 86, C.D. 3685 (1969), the court found that Congress has indicated that furnishings "may be ornamented as well as unornamented." 64 Cust.Ct. at 236.

In the *Barth & Dreyfuss* case, plaintiff claimed that terry cloth potholders were "like furnishings" under item 366.65 of the tariff schedules. The pertinent headnote provided that "the term 'furnishings' means curtains and drapes, including panels and valances; towels, napkins, tablecloths, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings * * *." Plaintiff maintained that the potholders were "furnishings" *ejusdem generis* with, and "of the same class and character" as the towels, napkins, etc. enumerated in the pertinent headnote. After the receipt of plaintiff's post-trial brief the defendant conceded the correctness of plaintiff's contention, and requested that it be relieved of filing a brief.

---

1. The *Sprouse Reitz* case, though not appealed to the Court of Customs and Patent Appeals, was inferentially affirmed in *Albert E. Price,* *Inc. v. United States,* 476 F.2d 1354, 60 CCPA 127, C.A.D. 1095 (1973).

The court agreed that plaintiff's argument was "well taken," and held that the potholders were "like furnishings" *ejusdem generis* with the towels, place mats, napkins, and dish towels enumerated" in the provision for "furnishings."

The merchandise in the *Joanna Western Mills* case consisted of plastic window shades on wooden rollers. The classification question presented was whether the window shades had been properly classified as "[c]urtains and drapes * * * and like furnishings," under item 772.35. An examination of the definitions of shades, curtains and drapes, not only revealed their similarity, but also that the articles "share[d] a common purpose or function in concealing, screening and controlling light." Since the window shades were used as "window coverings to provide privacy and light control," the court found that they were "*ejusdem generis* with curtains and drapes." 64 Cust.Ct. at 237, 311 F.Supp. at 1342. The court, therefore, held that the window shades were "like furnishings" within item 772.35.

In its brief in support of its motion, plaintiff refers to the broadness of the term "furnishings," and states that "it cannot be seriously argued that the shoulder and overlap covers" are "within the common meaning of the term furnishings." The question presented, however, is not whether the shoulder and overlap covers are "furnishings" for the statutory provision does not read "and other furnishings."

■ The claimed provision specifically enumerates *eo nomine* about a dozen furnishings, and includes "and *like furnishings.*" (Emphasis added.) The provision, therefore, offers a classic example for the proper application of the doctrine of *ejusdem generis.* Hence, proof that articles are "furnishings" is insufficient to establish that they are "like furnishings" within the tariff provision. The proof must establish that they are of the same kind and class as those specifically enumerated. For example, in the *Joanna Western Mills* case, the window shades were not merely held to be "furnishings." They were held to be "like furnishings," i. e., of the same kind and class as "curtains and drapes," articles specifically enumerated in the tariff provision.

Plaintiff invokes the customs law principle that, whenever imported merchandise is covered in two or more tariff provisions, it is to be classified under the one that describes it most specifically. Therefore, it maintains that since the overlap and shoulder covers have been classified under a general or "basket" provision, they should have been classified under the more specific provision for "furnishings."

■ The cited principle of relative specificity is not in issue, only its applicability. For example, it is basic that if merchandise is specified *eo nomine,* the *eo nomine* provision prevails over one that is general or less specific. The principle is of such importance and frequent application that it is codified in General Interpretative Rule 10(c) that provides:

> "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; * * *"

This approach, however, is circuitous for the merchandise is not specified *eo nomine* in the claimed provision, and the question presented remains whether it constitutes "like furnishings."

■ Plaintiff stresses the "likeness" of the plastic overlap and shoulder covers to table covers, furniture covers, mattress covers and pillow covers, and concludes that they are "like furnishings" within item 772.35. The "likeness" test, as suggested by plaintiff, would result in an expansion of the category beyond the legislative intent. The "likeness" must have reference to, and is limited by, the particular category, i. e., the kind or class of the enumerated articles. As stated by this court in *Kotake Co., Ltd. et al. v. United States,* 266 F.Supp. 385, 58 Cust.Ct. 196, 199, C.D. 2934 (1967), "[*e*]*jusdem generis* means literally 'of the same kind.'" Note also the case of *Vanaire Shade Corp. v. United States,* 66 Cust.Ct.

469, 473, C.D. 4235 (1971) wherein plaintiff claimed that vinyl folding doors should have been classified under item 772.35 as "*curtain-like* furnishings." (Emphasis in original.) In overruling the protest, and sustaining their classification as unprovided for articles of plastics, this court held that the vinyl folding doors were "not *ejusdem generis* with 'curtains' and 'drapes' and [were], therefore, not 'like furnishings'." Since the doors were not of the kind or class enumerated in the claimed provision, they had been properly classified under the general provision covering unprovided for articles of plastics.

Plaintiff, in support of its motion, places great reliance on the case of *Venetianaire Corp. of America v. United States,* 470 F.2d 1047, 60 CCPA 75, C.A.D. 1084 (1973). In substance, plaintiff submits that "applying the criteria of 'likeness' enunciated in the *Venetianaire* case, this Court should hold the imports to be describable as 'like furnishings' of plastics under item 772.35, TSUS." In the *Venetianaire* case the question pertained to the classification of plastic mattress covers and pillow covers which had been classified under item 772.15 as plastic household articles. In reversing this court, which had sustained the classification (67 Cust.Ct. 118, C.D. 4261 (1971)),[2] the Court of Customs and Patent Appeals held that they were "like furnishings" under item 772.35. Although the mattress covers and pillow covers were not specifically enumerated in item 772.35, the appellate court indicated that they were "almost identical" to the "plastic table and furniture covers * * * exemplary of furnishings classified in item 772.35." 470 F.2d at 1049, 60 CCPA at 77.

Item 772.35 specifies *eo nomine* "table covers" and "furniture slipcovers," and it is

significant that the appellate court stated that they "are all employed for like functions and purposes—namely, as protective coverings for the articles upon which they are used in the home." 470 F.2d at 1049, 60 CCPA at 78. The court quoted from the brief of the appellee the sentence that the "furnishings included in item 772.35, TSUS, are those commonly used *throughout the home,* either for decorative or protective purposes." *Ibid.* (Emphasis added.)

The statement of the appellate court, that the furnishings enumerated in item 772.35, are all used as protective coverings "for the articles upon which they are used *in the home,*" emphasizes a basic characteristic that is common to each of the articles specifically enumerated in item 772.35 (emphasis added). Apart from the decorative or functional aspect of the articles, the concept of "furnishings" in the *Venetianaire* case does not differ from that of the *Morimura* case where the court described them as "adjuncts and appendages *of the house.*" (Emphasis added.) 2 Ct.Cust.Appls. at 182.

An examination of the articles enumerated in item 772.35 will reveal that each one of them is used to enhance or protect other articles that are used in a home or household. Plaintiff, however, points out that the articles enhanced or protected "find use in furnishing places other than homes, such as hotels, motels, restaurants, ships, etc." It is clear, nonetheless, that they are all used on articles that furnish a *place* or a situs.

The articles enumerated in item 772.35 fall into a category with two subdivisions. The first consists of curtains, drapes, panels and valances. Clearly, these articles are appendages to a home, house or place, and it is not claimed that the overlap or shoulder covers belong to this group. The

---

**2.** In sustaining the classification, the Customs Court relied in part on a Bureau of Customs ruling that, although the plastic mattress and pillow covers were protective covers, they were "not used on furniture," and were therefore not classifiable under item 772.35 but under item 772.15 as plastic household articles. Also the 1968 Summaries of Trade and Tariff Informa-

tion stated that "mattress and pillow covers are among some of the more important articles of plastic housewares included under item 772.15 of the tariff schedules." 67 Cust.Ct. at 121–22. The appellate court likewise disagreed with the view that it had been the intent of Congress "to classify bedding separately from other furnishings."

second subdivision covers: " * * * napkins, table covers, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers." Since plaintiff claims that the overlap and shoulder covers are like table covers and furniture covers, it must contend that they are embraced in this second group.

The dictionary definitions of the enumerated articles make it clear that they are all articles used with furniture, or with other articles used in a home, to adorn or protect it, and enhance the room or place in which the articles are displayed or located. Defendant points out that even "napkins," used to wipe lips or fingers, also serve to enhance the table with which they are used, thereby providing a more elaborate appearance for the room.

The affidavits submitted by plaintiff indicate that the overlap and shoulder covers are chiefly used as protective coverings for wearing apparel displayed for sale in retail stores, and to protect wearing apparel in storage. Unlike any of the other furnishings enumerated in 772.35, they are not used to adorn, protect or enhance adjuncts or appendages of a house, home, room, place or situs. They lack the one common characteristic which unites all of the furnishings enumerated in item 772.35. See *Kotake Co., Ltd., et al. v. United States,* 266 F.Supp. 385, 58 Cust.Ct. 196, 199, C.D. 2934 (1967).

Overlap and shoulder covers are designed and used to protect clothing rather than to protect or enhance a home or any other place or situs. The articles with which they are used are dissimilar to those specified in item 772.35. Differently stated, the imported articles are designed to be used for clothing, whereas all of those set forth *eo nomine* in item 772.35 are designed to be used on articles or furnishings associated with a home or place.

The imported overlap and shoulder covers do not ornamentally or functionally protect or enhance any home, house, place or situs, or any articles or furnishings used therein. They are, therefore, not "like furnishings"

*ejusdem generis* with the articles specifically enumerated in item 772.35 of the tariff schedules.

In view of the foregoing, it is the determination of the court that plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted, and the customs classification of the imported merchandise under item 774.60 of the tariff schedules is sustained.

Judgment will issue accordingly.